IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** ) | |
| ) | **CR No.: 00-132** |
| **v.** ) | |
| ) | **JUDGE COHILL** |
| **JAMES C. WICKWIRE** ) | |
| ) | **ELECTRONICALLY FILED** |
| ) | |

### SENTENCING MEMORANDUM

AND NOW COMES Defendant, James C. Wickwire, by and through his attorney, Samuel J. Reich, Esquire, and files the following Sentencing Memorandum for the Court's consideration at Mr. Wickwire's sentencing for his violation of Supervised Release.

### Introduction

This Memorandum states the defense contentions regarding the appropriate sentence for James Wickwire. A violation of Supervised Release is a serious criminal charge and the defense has no intent to trivialize the offense. Nothing stated herein is intended to deny guilt or shift blame to others. The purpose here is to state the considerations in favor of leniency.

### Procedural History

On or about February 22, 2001, Mr. Wickwire pleaded guilty to two (2) counts of a seven (7) count Indictment. Specifically, Mr. Wickwire pleaded guilty to Count 1 which alleged Conspiracy, in violation of 18 U.S.C. §371 and Count 5 which alleged that Mr. Wickwire sold a stolen firearm, in violation of 18 U.S.C. § 922(j). A Presentence Investigation Report ("PSIR") and an Addendum to the

PSIR was submitted to the parties and the Court by the Probation Office.

On or about May 14, 2001, this Court sentenced Mr. Wickwire to 30 months on each count, 1 and 5 respectively, to be served concurrently. This Court further imposed a three (3) year term of Supervised Release to begin immediately upon release from incarceration. Mr. Wickwire was committed to the Bureau of Prisons ("BOP") at FPC Allenwood in Montgomery, Pennsylvania on June 27, 2001. Upon successfully completing his term of incarceration, Mr. Wickwire was released and placed on Supervised Release under the supervision of the United States Probation Office.

In or about October 2006, the Elk County Court of Common Pleas sentenced Mr. Wickwire to six (6) months incarceration at the Elk County Jail for Contempt of Court in that he failed to obtain employment and make necessary child support payments for his three (3) children at Case Nos. DRSNO: 97-224, DRSNO: 04-00018 and DRSNO: 06-00019. See Petition on Supervised Release. Each sentence was ordered to be served concurrently. Id.

On or about January 5, 2007, Probation Officer Conde filed a Petition on Supervised Release with this Court alleging that Mr. Wickwire has committed myriad violations of his Supervised Release throughout the last two (2) years, including: failure to obtain employment; failure to make the necessary child support payments for his three (3) children to the Elk County Domestic Relations Office; failure to submit monthly reports to his probation officer within the first five (5) days of every month; failure to make joint and several restitution in the amount of $1,775 to victim, George Heitzenreiter; and failure to pay a special

assessment in the amount of $100 to the United States.  See Petition on Supervised Release.  On or about January 10, 2007, the Government filed a Motion for Writ of Habeas Corpus Ad Prosequendum.

### The Sentencing Commission's Policy Statement on Supervised Release

The Sentencing Commission has not promulgated any Guidelines governing violations of Supervised Release, but has issued Policy Statements to provide sentencing judges with guidance.  The Commission noted that it would be difficult in many instances for the court or the parties to obtain the information necessary to apply the proper guidelines to new conduct or to determine the specific offense characteristics or adjustments.  U.S.S.G. Ch. 7 A3(b).  "At revocation the court should sanction primarily the defendant's breach of trust, while taking into account, to a limited degree, the seriousness of the underlying violation and the criminal history of the violator."  Id.

The Sentencing Commission has classified three (3) grades of Supervised Release violations:  serious new felonious criminal conduct (Grade A), less serious criminal conduct (Grade B), and technical violations (Grade C).  See U.S.S.G. Ch. 7 Pt. A4 and § 7B1.1(a).  Mr. Wickwire's conduct is a Grade C violation:  conduct constituting...(B) a violation of any other condition of supervised release.  U.S.S.G. § 7B1.1(a)(3).

According to the Sentencing Commission's policy statement, upon a finding of a Grade C violation, the court may "(A) revoke the...supervised release; or (B) extend the term of ...supervised release and/or modify the conditions of

3

supervision." U.S.S.G. § 7B1.3(a)(2). If the Court chooses to revoke Mr. Wickwire's Supervised Release, his applicable sentencing range is 6 to 12 months (Grade C violation and Criminal History Category of IV), U.S.S.G. § 7B1.4(a). It further is noted that the Sentencing Commission advises

> any term of imprisonment imposed upon the revocation of Supervised Release shall be ordered to be served consecutively to any sentence of imprisonment that the defendant is serving, whether or not the sentence of imprisonment being served resulted from the conduct that is the basis of the revocation of ...supervised release.

U.S.S.G. § 7B1.3(f).

It is respectfully submitted that a revocation of Supervised Release and an additional consecutive term of incarceration is not appropriate in Mr. Wickwire's case.

### **Mr. Wickwire's Family Obligations and Employment Issues**

Mr. Wickwire does not deny his violations of his Supervised Release; however, there are circumstances about Mr. Wickwire's life which must be brought to the Court's attention for its consideration in the imposition of an appropriate sentence.

As previously noted in the Petition for Supervised Release, Mr. Wickwire is the father of three (3) children, Brooke Wickwire, age 10, Devon Gausman, age 6, and Braden Larkin, age 2. The children are a result of relationships from three (3) different women, and all children currently live with their respective mothers in the Ridgway Area of Elk County, Pennsylvania. Mr. Wickwire does not have contact with his daughter, Brooke, at the direction of Brooke's mother; however, she does know that Mr. Wickwire is her father. Mr. Wickwire does see Devon on

the weekends, but admits that he could have a stronger relationship with his son.

Until his incarceration in Elk County in October 2006, Mr. Wickwire was involved in a relationship with Braden's mother, Christina Larkin, and saw his son everyday. However, according to both Mr. Wickwire and Ms. Larkin, the future of their relationship is unknown at this time due to Mr. Wickwire's incarceration. Ms. Larkin stated that even if her relationship with Mr. Wickwire does not continue upon his release, she will continue to support his rehabilitation efforts and not deny him from spending time with Braden.

Upon release from federal custody in or about 2004, Mr. Wickwire obtained intermittent employment in the Ridgway area of Elk County at Elcam, Inc., and then at Spherion as a general laborer. In or about January 2006, the Elk County Court of Common Pleas Family Division revoked Mr. Wickwire's driver's license for his failure to pay child support. When Mr. Wickwire could no longer find reliable transportation to work and missed work, Spherion gave Mr. Wickwire the option to voluntarily resign or be terminated. Mr. Wickwire chose to voluntarily resign. From or about January 2006, Mr. Wickwire has been unemployed. However, he did do occasional odd jobs when the opportunity presented itself and babysat his son, Braden, and Ms. Larkin's other child, while Ms. Larkin attended nursing school.[1]

---

[1] Shortly after Mr. Wickwire's incarceration in October 2006, Ms. Larkin was forced to drop out of nursing school as she could not find evening childcare which she needed in order to study. Ms. Larkin plans to re-enroll in nursing school upon Mr. Wickwire's release as he will watch the children during the evening allowing her time to study.

Mr. Wickwire's child support situation with the Elk County Domestic Relations has him trapped in a downward spiral. He cannot afford to pay the child support unless he is employed. However, due to the revocation of his driver's license, he was unable to obtain steady employment within walking distance or that would allow him to work hours that transportation was available to him.[2] Mr. Wickwire attempted to obtain employment after his driver's license was revoked, but was constantly turned down once he informed the potential employers of his situation. Mrs. Wickwire (James' mother) has reported to defense counsel that two (2) days after Mr. Wickwire was incarcerated in October and as recently as last week, Mr. Wickwire has received telephone calls for employment in Elk County.

### Mr. Wickwire's Mental Illness

Mr. Wickwire suffers from mental illness, including depression a severe personality disorder and severe polysubstance dependency. Medication was prescribed while he was in federal custody and it seemed to help. Both Mrs. Wickwire and Ms. Larkin, have stated to defense counsel that it is obvious that Mr. Wickwire is suffering from depression due to his current situation. Upon release from incarceration in 2004, Mr. Wickwire attempted to see a mental health professional for his mental illness and follow up with care he received while in custody, but was unable to for two (2) reasons: 1.) Mr. Wickwire did not

---

[2] Both Mr. Wickwire's mother, Dorothy Wickwire, and Ms. Larkin have stated to defense counsel that they are willing to drive Mr. Wickwire to and from work if it does not conflict with Mrs. Wickwire's employment or Ms. Larkin's class schedule.

have insurance and was unable to pay for the appointments;[3] and 2.) Public assistance denied benefits to Mr. Wickwire due to his child support and federal restitution obligations and because he apparently missed an important appointment. Both Mrs. Wickwire and Ms. Larkin stated that prior to his incarceration in October, Mr. Wickwire was unable to get out of bed in the mornings and suffered from mental lapses which he was unable to recall what happened for days at a time. Since October 2006, Mr. Wickwire has been receiving Prozac and Remron.[4] However, once released from custody, it is most likely that Mr. Wickwire will be unable to afford to maintain these prescriptions.

Furthermore, prior to his initial sentencing in this case in 2002, Mr. Wickwire was an alcoholic and cocaine and heroin addict. While incarcerated at FPC Allentown, Mr. Wickwire participated in substance abuse counseling and has not used cocaine or heroin since his release in 2004.

While it is commendable that Mr. Wickwire has been able to abstain from narcotics and opiates, his life has not seemed to improve since his release from incarceration. Mr. Wickwire's child support obligations weigh heavily upon him and the lack of employment has obviously compounded the problem. Now, add an untreated and possibly debilitating mental illness into the equation and the result is that Mr. Wickwire's life will maintain the current cycle: he cannot find work because he does not have a driver's license because it was revoked due to child support obligations, he cannot pay child support obligations due to

---

[3] It should be noted that even when Mr. Wickwire was employed, he did not receive health benefits.
[4] The only time Mr. Wickwire receives medication is while he is incarcerated.

unemployment, and finally, he cannot receive the mental health treatment he needs to be able to maintain steady employment because he cannot receive public assistance medical benefits due to outstanding child support obligations. Although it is conceded that Mr. Wickwire has contributed to his current situation, it is respectfully submitted that he is also a victim of the bureaucratic system that was originally designed to help rehabilitate people who found themselves in difficult situations.

## **Conclusion**

No matter what occurs in Mr. Wickwire's federal case, the Elk County Court of Common Pleas is going to follow its own propensities for punishment. It is respectfully submitted that there is no need for the federal court to impose an additional sentence upon Mr. Wickwire for his violation of Supervised Release for failure to pay child support. If Mr. Wickwire is unable to find employment upon release from incarceration, it is almost inevitable that he will be found in contempt of court again and most likely serve a longer sentence than his current sentence of six (6) months, whether rightly or wrongly. The seriousness of Mr. Wickwire's failure to pay child support is being addressed in Elk County and there is no need for duplication at this time.

It is respectfully requested that instead of revoking Mr. Wickwire's Supervised Release and imposing an additional period of incarceration, this Court extend the current term and modify the conditions by requiring active supervision of Mr. Wickwire and participation in a rigorous mental health treatment plan. It is further requested that the Probation Office actively assist

Mr. Wickwire in finding a treatment center that will aid him in this time of need and be amenable to Mr. Wickwire's financial situation.

It is respectfully submitted, that if Mr. Wickwire is given an opportunity to receive the mental health treatment he needs, other aspects of his life may start to fall into place allowing him to become a meaningful member of his community once again.

The defense recognizes the seriousness of a Supervised Release violation and the community's interests for punishment. However, for the reasons articulated in this Sentencing Memorandum, it is respectfully requested that this Honorable Court extend Mr. Wickwire's Supervised Release and/or modify the conditions of his supervision to which the Court deems appropriate. This sentence will be sufficient to punish, deter and rehabilitate Mr. Wickwire, as well as accomplish the goals of punishment set forth in the Sentencing Guidelines.

Respectfully submitted,

Dated:  January 30, 2007

　/s/ Samuel J. Reich　
Samuel J. Reich, Esquire
Pa. I. D. No. 00935

1000 Koppers Building
436 7th Avenue
Pittsburgh, PA  15219
(412) 391-3700
(412) 391-5323—facsimile
sreich@reichalexander.com